Ms. Burk. Good afternoon, Your Honors. May it please the Court, Christine Burk on behalf of the appellant, Frederick Capps, and although I did not with the court crier reserve two minutes out of my ten minutes as the EEOC has preserved five minutes. There are three discrete issues before this court, two of which are the appellant's FMLA claims and one of which is the interplay between the ADA and the FMLA. I'd like to focus my attention right now on the two FMLA claims at issue. The facts of this case from the appellant's questions of fact for a jury, the nature of the dispute between the parties is whether or not Mondelez, the employer, had a good faith or honest belief that Mr. Capps was abusing his FMLA leave and so two issues arose in the level of court proceedings. What facts can you point to to support your position? I'm sorry, Your Honor? What facts can you point to to support your position? So numerous facts, Your Honor. Foremost, the FMLA allows for leave for one reason, if the employee is unable to perform his specific job functions. The nature of Mr. Capps' job functions in this case are crucial. He was a laborer, a mixing technician, responsible for standing for the entirety of an eight-hour shift, required to lift up to 50 pounds, and constant other physical activities. So in the context of his hip condition, which prohibited him from times from standing, walking, sitting. Could you talk about the facts surrounding his discharge from employment? So the facts arise, Your Honor, that the period of time we're speaking about is February of 2013 up to the following year in February of 2014. In February of 2013, Mr. Capps was unequivocally initially approved for FMLA leave for various intermittent days during the week of February 11, 2013. Almost one full year later, purportedly, at least according to Mondelese, there was a newspaper article anonymously slipped under their door, and there was a dispute between myself and the District Court judge over the relevance of the inquiry thereafter. Under any normal circumstances, Mondelese has no regard for DUIs as it pertains to their employees. That is, if an individual has a reasonable means of transportation to him. In this case, the defense is arguing that we thought he lied to us. So what facts are in dispute as to whether or not he lied? So they're saying we lied because we believe that he was misusing his FMLA leave. So then the question becomes, what was the FMLA leave for, and what facts were available to the employer that would suggest that he was doing something in contrast of what the intended purpose of the FMLA was for? He specifically asked for leave at a time when he was, if I'm not mistaken, in jail for driving under the influence? Incorrect, Your Honor. And the following day? Initially, Your Honor, on Monday, he called out for leg pain, the 11th. The 12th, he called out for leg pain. He returned to work, and according to his doctor, prematurely, because he thought his pain had subsided on that Wednesday. On the Thursday in question, he still called out for leg pain in advance, well before he went out for dinner that evening, drank any alcoholic beverages, and was ultimately arrested for a DUI. The following day, well after he was released from being incarcerated, he called out two hours in advance of his scheduled shift for leg pain. Is it the case then, Ms. Burke, that in no instance did he misrepresent his medical status to his employer? The facts suggest to the contrary, Your Honor. Unless he was omniscient and believed that he was going to be tagged for a DUI that evening, the facts demonstrate that he was suffering from leg pain all week for a condition that he had formally applied for. I might have misread the record, but I thought he spent a day in jail under the influence charge and requested FMOA leave for that day in jail. Incorrect, Your Honor. The day at issue when he received the DUI, he requested leave at 1 o'clock in the afternoon. His scheduled shift was around 1 initially. He called out late for leg pain, and then by 2.20, he called out saying that he was going to require the entire day. It wasn't until late that evening around 9 p.m. at the night that he was arrested for a DUI for coming back from a pub about a mile and a half from his home. The second day, it's undisputed, and the employer does not dispute this, Oxenberg, the HR manager, that he was released and could have come to work. So, in no instance did he request FMOA leave in connection with his driving under the influence charge? No, Your Honor. And when the investigation ensued, Mr. Capps volunteered to provide any information that they would like to substantiate that he was legitimately using the days in question. Let me just ask you one more question just to follow up. That is, in fact, why he was discharged, wasn't it? They continue to discharge because they honestly believe that he was abusing his FMOA leave. They honestly believe that he was abusing his FMOA leave, Your Honor. Okay. Is that a factual question or a legal question? We believe that it's a factual question, that the district court did not take into consideration one additional point, which we believe is crucial to our brief, that the court heavily relied on this court's unpublished opinion in Parker. In Parker, there was a Verizon employee. So you're saying that Mondaliz was wrong. It was simply incorrect with regard to the basis for his discharge? No. The question is whether or not a juror could disbelieve that they had an honest belief. We submit that the belief by the employer shouldn't have just been them asserting that they honestly believe he was misusing FMOA. We believe that would leave numerous employees susceptible to termination in any circumstance where the employer is dissatisfied with what they're doing on leave. But isn't that the language or like language this court uses in lots of other employment discrimination contexts where an employer can be mistaken, but they just can't be discriminatory? So why would we do anything different than have the same test in the FMOA context and why would we do anything more than that? So in the Sixth Circuit addressed that issue and said that while the Third Circuit and The Third Circuit doesn't do two things. It doesn't determine if that specifically applies to both FMOA interference and FMOA retaliation claims. And we submit, Your Honor, that in all those other either Title VII, ADA, or employment contexts, it differs where in this particular case the federally protected rights at issue, the days that he took, form the basis for the decision. So if, for example, Your Honor, an employer terminates an employee for attendance under a no-fault attendance policy after they've already taken the leave at issue, is that a retaliation claim where intent is not at issue? There's a deprivation of rights there. That's why we believe in this particular case there's a serious crossover between the interference claim and the retaliation claim. But let's separate them out then. In the interference world, the elements, and we have precedent that says you don't have to prove discriminatory intent, right? So the belief of the employer wouldn't matter. That's what we submit to this Court, Your Honor. So the issue by the district court was element number five, and they relied upon Callison, and correctly that's the stated elements, but we submit that the interpretation of that fifth element and what Callison stands for was erroneous. But interference requires a deprivation of leave time, and your client got all the leave that he ever asked for. The only thing that, quote, interfered was the fact he got fired, but that's not what it, that's a retaliation claim, no? Well, first of all, I mean, our moving papers recited that Mondelez takes the position that that was not protected leave and did not afford him the benefits provided under the Act. So what do you mean, they heard his position, they prepared documents, they had a basis for their honest belief even though they don't necessarily need to have one as long as it's not discriminatory? Well, we believe they did not have a basis for their honest belief. They were upset, Your Honor, that he was out driving, if he was out of the house, and that if in fact he could drive or be out of his house, that he could in fact come to work. The FMLA regulations place zero restrictions on an employee's ability to do anything while they're on, place any restrictions to do anything while leaving, and they could run errands, et cetera. But the representative of the defendant said that the reason why he took the job action he did was because he thought he was being dishonest, he wasn't being forthcoming, that he wasn't providing information. They gave him the undated doctor's note, and thereafter gave a doctor's note with dates, and both, we have a doctor talking about the court appearances. So where in the record, kind of going back to what Judge Restrepo asked, where in the record is there evidence that we should question the honest belief and find it was pretextual? I'm out of time. May I take one brief second to respond to Your Honor's specific question? I think it's a culmination of things, Your Honor. I think point one is the fact that in any other circumstance they wouldn't have been investigating Mr. Capps, and they did so solely because he was taking time off frequently under the FMLA, and that's admitted testimony by Ms. McAvoy. Point number two, when they did, in fact, learn that he had been charged with a DUI, it's suggested that he was incarcerated for 72 hours. They cross-referenced to see if he's working on those days in question, and the records clearly demonstrated that he'd been calling out all week for FMLA reasons well before he obtained the DUI, and on the day of the DUI actually called out before that occurred. And then the question becomes why was he calling out on leave? And even if he was at a local pub drinking beverages and unfortunately was irresponsible enough to get in the car and drink and drive, was he doing anything that was incompatible with his basis for leave? And does the FMLA even allow an employer to unnecessarily scrutinize every activity that someone does while on leave? And I think that a fact finder could conclude that even though he went out to a didn't have a legitimate basis to believe that he could still come to work and mix dough and stand for an eight or more hour shift with forced overtime, Your Honor. Thank you, Ms. Burke. I was going to ask you regarding the standard that we consider as whether it's an honest belief or a reasonable and honest belief that you indicated in your brief, but on your trip back to the address set, thank you. Good morning, Your Honors. May it please the Court. Jeremy Horowitz with the EEOC amicus in this case. This case involves two distinct but complementary statutes, the FMLA and the ADA. Under the FMLA, an employee who's qualified and takes, has temporary medical leave is entitled to job security. Under the ADA, an employer is required to provide reasonable accommodation, which might include temporary medical leave to a qualifying employee. So both statutes involve temporary medical leave, but one does not preempt or preclude the other one. So in this case, the district court came to several conclusions that are at odds with both our, both the statutes, our regulations, our guidance on this issue, and a number of circuit court precedents. First, it found that the... How does it work out practically if an employee asks for FMLA leave, does that send a message to the employer that you might also qualify for ADA, or does the employee ask for both? Why automatically trigger the other? Potentially it could. It really depends on the factual circumstances at issue. But there's nothing that inherently precludes, and that's what the district court held in this case. But I think following up on that is, how is the employer supposed to know if a person comes and says, under the FMLA, I'd like to take my leave, you get your 12 weeks, how would the employer know this is also an ADA request without that time limit? Right. Well, it really, again, Your Honor, and I don't mean this to be a dodge in any way, but it is a fact-specific determination. And so the example that's given in the guidelines is, if an employee says, I need six weeks off to take care of this back problem that I have, then in that case, the employer is on notice that it's potentially an issue, there's a back problem here. The employee is currently requesting six weeks. When it's time for the employee to come back, then they might need accommodations, they might not. Was Mr. Kef's disability present with the employer so the employer knew that it might consider ADA relief? Yes, Your Honor. He had a condition, avascular necrosis, that had been with him, I believe, for roughly 10 years. And he had had surgery to correct it, and he had previously taken leave and given up. So even if, in this particular case, and I know you're not really here to advocate on this, where the employee received intermittent leave, as requested, always was certified, even if one were to consider that ADA, an ADA accommodation, he got it here. So why would we have to opine at all on whether the FMLA should ever intersect with the ADA under these facts? Well, Your Honor, it's the district court's opinion that said that he can't have it both ways, that it's got to be either the one or the other, and that, by definition, when an employee takes leave under the FMLA, that's an admission that he's not a qualified employee under the ADA. And so give me an example of when that would be sufficient for an employer to know it's an ADA request for accommodation. In a, well, for example, the back injury case, in the guidelines, when an employee's back is hurt, takes time off to have surgery to take care of that, and it's time for him to come back, the employer is on notice that the employee has a back injury. At that point, if the employee requests additional leave because they need, I don't know, some form of additional leave to take care of the back injury at the conclusion of the six weeks initially requested, then the employer is then on notice that it's required to engage in the interactive process at that point. So is it the case that an employee can receive both benefits concurrently? Yes, Your Honor, and both the ADA regulations that we've promulgated and the Department of Labor's regulations regarding the FMLA. So that's what you say, part of what you say, the district court got wrong? Correct, Your Honor. Okay. Correct. It's really those two things, that an employee necessarily cannot be qualified for ADA. One doesn't disqualify the other. Exactly. And can be received both at the same time. Correct. And that was the other issue that the district court said. The district court said that by definition, one request cannot suffice to trigger an employer's obligations under both statutes. When, in fact, our position and the position of the Department of Labor is that a single, and also the Smith case in the Tenth Circuit, and this Court's unpublished McCall case, observed that a single request can put an employer on notice of both. Is there any circuit authority from other circuits to the contrary? Not that I'm aware of, Your Honor, no. Thank you. Thank you. Thank you very much. Thank you. Ms. Greenspan. May it please the Court. Good morning, Your Honors. My name is Leslie Greenspan of the Tucker Law Group, and I represent the Appellee Mondelez Global LLC. We ask that this Court affirm the decision of the district court entering summary judgment on both the FMLA and the ADA claims. Specifically, the  What do you make of the EEOC's position? Do you disagree with the EEOC's position? I disagree with some of it, Your Honor, but not all of it, and I'm glad you... Let's tackle it right away. What do you agree with? With the EEOC's first argument. If I may, let me just note at the outset that this entire argument has been waived because Appellant's Counsel never raised it. They have a one-paragraph placeholder in their brief, and this case was never about the ADA to begin with. But let me address your question, Your Honor. The EEOC makes two points. The first is that there's nothing inherently inconsistent about requesting both FMLA and ADA. We don't disagree with that, but that's not this case. In this case... Because as a matter of law, you don't disagree with it, but it doesn't apply to these facts. Correct. There was never a request for a reasonable accommodation in this case. The problem was the comments made by the district court, I think. Well, Your Honor, we believe it's a misinterpretation of what the district court said. The district court never said you can never have both FMLA and ADA at the same time. He never said that. What he said is that in this case, where CAPS only requested FMLA, that that in and of itself cannot be ADA. And that is consistent with what the EEOC's own fact sheets say. The EEOC quotes in their brief a fact sheet, FMLA slash ADA fact sheet, and they direct the court to question 16. But conspicuously missing from the EEOC's brief is the very last sentence of that answer, which says, and I quote, if the employee states that he only wants to invoke rights under the FMLA, the employer should not make additional inquiries related to the ADA coverage. That is missing from the EEOC's brief. And that makes crystal clear that FMLA request alone cannot be a request for a reasonable accommodation under the ADA. That's all the court said. It was not a sweeping change in the law. So that's the point we agree on with the EEOC. The point that we disagree on is a single request for medical leave triggers an employee's rights under both the FMLA and the ADA. That is not the over 10 years, saying he cannot work. So you have to either request both at the same time, or you request one after the other, but one doesn't exclude the other? Well, yes, Your Honor. And the example given by counsel for the EEOC was, I need six weeks off for a back injury. But you do have to make the request, though. Absolutely. It's not automatic. Absolutely. Judge Schwartz was asking about how do you assert the rights one way or the other. Yes, the employee absolutely has the burden of putting the employer on notice. And as Judge Schwartz noted, how is an employer to know what is being requested and what is a reasonable accommodation? In this case, Capps had been certified as having debilitating exacerbations of his hip pain, flare-ups that required bed rest. That's over 10 years. What is Mondelez to know at that point that he's requesting in terms of accommodation? That he's already told him he cannot work. So that's where we disagree with the EEOC. If I may address the FMLA claims as well, the district court properly concluded that there was no FMLA interference in this case because Capps received all of the benefits to which he was entitled. And we're talking about the February 2013 timeframe. February 14 and February 15, 2013 are the only dates in question. What were the facts surrounding his discharge? What led Mondelez to say, you've got to go? At the time Mondelez learned of his DUI conviction and jail time, it raised a question about whether he was in attendance at work on those days. Mondelez pulls the criminal docket off the internet and you have a bunch of non-lawyers looking at a criminal docket compared with his attendance record, which includes his FMLA attendance. There's an overlap between the dates on the criminal DUI docket and the FMLA days and these non-lawyers go, hmm, that's suspicious. So they confront Capps with the information. He says, you want documentation? I'll get it. The paperwork trickles in. It's incomplete. As Judge Schwartz noticed, we've got doctor notes, one that's backdated, one that's undated. It contains legal information such as he was not present in court because he waived his right to arraignment. Why is a doctor saying that? How is a doctor saying that? The paperwork he brought in didn't answer their questions. It raised more questions. And ultimately he was terminated for violating company policy on dishonesty. As Judge Restrepo pointed out at the outset of Appellant's argument, we thought you lied to us. That was the basis of his termination. It's what they said when they met with him, February 26, 2014. It's what they said in his termination. Ms. Burke says that there was no misrepresentation because he did not take FMLA leaves in connection with his DUI offense. Well, at the time, what does Mondelez know? They're looking at the criminal docket and they're looking at his attendance and they're seeing overlap in the dates. And there's multiple dates. It's the date of his arrest and it's several of the court dates. So that's what Mondelez honestly believes is he's doing. He's taking FMLA leave to go to court and now ultimately through this litigation, what we have subsequently learned is that he went to the bar, drove himself to the bar, met up with friends, drank beers, shots, got so severely intoxicated that when he tried to drive home and was driving on the wrong side of the road, got arrested for driving under the influence with a blood alcohol concentration of .339%, which this court is aware is more than four times the legal limit in this state. So that's what we've learned through this litigation. And subsequently when lawyers are looking at the docket saying, hmm, he might have waived the right to arraignment and not been in court that day, it's certainly clear now in hindsight that he was not necessarily in court on the DUI conviction on, for instance, June 4th. But what did Mondelez know at the time is the relevant inquiry. And at the time, they're looking at the criminal docket and they are seeing that he is using FMLA leave on multiple dates that are on that docket. Is this a legal issue or a factual issue? At the end of the day, is this a factual issue or a legal issue? It's a legal issue. And as the district court properly noted, there was not a shred of evidence of pretext in the record. And this goes in part to one of Judge Schwartz's questions, which was, I'm sorry, Your Honor, I lost my place. Oh, I'm sorry, yes. I apologize, I'm a little nervous. It is a good question. Mondelez can be mistaken. They just can't be discriminatory. So even if they were ultimately wrong on a couple of those dates, and admittedly they were. It's the honest belief standard? Under the honest belief standard? Yes. Is that what you're referring to? Well, I'm referring to the fact that, as this court and many, many other federal courts have noted, the court is not to sit as a super personnel department, second guessing every decision a business makes. They can be wrong, but that's not illegal discrimination under the statutes. So in this case, in terms of the interference, there was none. In February 2013, he got everything he asked for. There was no interference. Case closed on the interference claim. But let me turn to the retaliation claim. Retaliation, there was no retaliation here because Mondelez had this honest belief that he had misused his FMLA leave. And as the district court properly concluded, he hadn't satisfied his, he hadn't made out his prima facie case because there was no causal link between the protected activity and the adverse action. There is a nearly one-year temporal proximity between the day of the protected activity, taking FMLA leave in February 2013, and his suspension, which takes place a year later, February 26, 2014. And that is not unusually suggestive of discriminatory animus. So there was no causal link there. If I could ask you about the Sixth Circuit's honest and reasonable belief standard, should we adopt that? If not, why not? Your Honor, to date, this court has not adopted that standard. The cases of Parker and Warwiss make clear, and admittedly, those are non-precedential decisions by this court, but this court certainly may consider them as persuasive. That has not been the standard in this circuit. Frankly, it doesn't change the outcome. It has to be, if we want to change the standard and make it honest and reasonable, there's nothing unreasonable about Mondelez investigating his attendance when they become aware of this DUI conviction and jail time. Is there a meaningful distinction between the two? Your Honor, none that I can... If it's reasonable, then it must be honest. If it's honest, it must be reasonable. Or is there a difference? Your Honor, I don't see much difference. I don't know how to distinguish them. But frankly, either way, Mondelez has met its burden here of showing that, of what it knew and what it did. And it was not based on illegal discrimination. Turning to the last point, as I mentioned, even if Mondelez's honest belief is mistaken, and we don't believe it was, but even if it was, that does not make it illegal discrimination. And the two cases, Parker and Warwiss, are very on point in this case. Parker, in particular, has multiple reasons that the employee came back with to say, aha, pretext. And the court said, no, that's not pretext. For instance, the plaintiff in Parker, who was out on FMLA leave because he had a lung disorder, was seen at his new home's construction site and was believed to have been using heavy electronic equipment. He was terminated for violating company policy about dishonesty. It's awfully similar to this case. And in that case, this court affirmed the district court's grant of summary judgment based on the honest belief defense and found that even if the employer was wrong, the honest belief of the employee's misuse of FMLA would defeat any claim of FMLA. And in that case, the plaintiff came back and said, well, they should have asked for a doctor's note. They should have asked for more information. They should have gotten a second opinion. And the court said, no, no, no. Now you're criticizing their investigation. They can be wrong, but that's not discriminatory. And multiple other examples of what the plaintiff in Parker came back to as pretext, which the court, all of which the court discounted, just as the court did here, there was no evidence in the record of pretext. It would be that Mondelez might have realized that its process might have not been fair, and it was the only record of evidence on that point. And then you're going to ask me, so why did the district court not offer a full reinstatement? Because in fact, it did offer Mr. Kappa's job back. Yes, Your Honor, he was offered full reinstatement in April 2014, two months after his termination. Well, full reinstatement without back pay, right? Yes. Yes, that's correct. And the record evidence is that. Is that bringing into question the initial determination? It does not, Your Honor. The only record evidence on that point is that that was done in an effort to compromise with the union. That is the only record of evidence on that point at all. Unless the court has any further questions, I'd be happy to address them or happy to save you the time. Thank you very much, Your Honors. Thank you, Ms. Grissom. Ms. Burke? Ms. Burke, can you start with the pretext issue? Your Honor, the pretext issue speaks directly to what we're ignoring here is when we get to mistaken, the first step is whether or not there was an honest belief. And with the pretext issue, the question is whether or not a reasonable fact finder could disbelieve the honest belief. And that's where, while slight, I do believe there's a difference between just asserting that there's an honest belief which is almost impossible to refute and an honest and reasonable belief when you look at all the facts relevant to the nature of his job duties and what exactly it was he was doing on leave which was not inconsistent with his ability to work. If you look at some of our other civil rights statutes, an employee can't even complain about discrimination unless it's a sincerely held belief as well as objectively reasonable. In this particular circumstance, in any scenario, an employer could just assert that they honestly did not believe that the employee was using the leave for the intended purpose. And there would be no manner to scrutinize that because you cannot refute what someone says, which is oxenford here, he honestly believes. And I wanted to speak, Judge Schwartz, to one point that you had raised which was a suggestion which was made by the defendant or the appellee in this case. There was no lack of cooperation on Mr. Capp's end. If you look at a snapshot in time, i.e. the termination, they met for that suspension meeting and it wasn't the company. It was Capps who said, I will provide you with any information that you would like. And immediately within one business day, he provided a full note from his doctor. They didn't like it because it was undated and they also, according to Oxford, questioned it because it commented on purported legal issues. Immediately he provided a dated note to them. And in addition, he gave access to his defense attorney's contact information. They did not ask any additional follow-up questions from him, his defense attorney, nor his doctor, Oxenford, had access to his doctor. Mr. Capps was saying, you have free reign. I'll answer any questions you have. The point that Your Honor makes, Judge Schwartz, is that literally if they had asked the questions, the evidence shows in the arbitration forum they got all the answers they needed. They could not establish that one single point in time was he using his FMLA leave to attend court proceedings, as they may have originally anticipated, nor there was any record evidence to refute that he did not need the leave for the intended purpose. If I may, Your Honor, just one point. Parker and Warwas are two crucial opinions in this particular case, but in Parker it should be noted that the court never addressed the issue of whether or not the employer had an honest belief in that case. It was not disputed amongst the parties, and therefore the court didn't address the issue. And if you look at the law in Parker, it cites to both standards district court opinions saying honest belief, and it also cites, I think, the District of Kansas opinion saying honest and reasonable belief. In Warwas, there was no reason to dispute the sincerity of the employer's belief, because that employee was saying they could not work, the doctor said could not work in any capacity, and that plaintiff was working in another capacity for a different employer. Thank you. Thank you, Ms. Burke. Thank you. And also, Ms. Greenspan, Mr. Harmon, thank you very much for your arguments, and we'll take the case under advisement.